1    SEYFARTH SHAW LLP
     Alfred L. Sanderson (SBN 186071)
2    asanderson@seyfarth.com
     Ferry E. Lopez (SBN 274080)
3    flopez@seyfarth.com
     400 Capitol Mall, Suite 2350
4    Sacramento, California 95814-4428
     Telephone: (916) 448-0159
5    Facsimile: (916) 558-4839

6    Carmine R. Zarlenga
     (*Pro Hac Vice* application pending)
7    czarlenga@mayerbrown.com
     MAYER BROWN LLP
8    1999 K Street NW
     Washington, DC 20006-1101
9    Telephone: (202) 263-3000
     Facsimile: (202) 263-3300

10

11    Attorneys for Plaintiff
     FOSTER POULTRY FARMS

12

### UNITED STATES BANKRUPTCY COURT

13

### EASTERN DISTRICT OF CALIFORNIA

14

### SACRAMENTO DIVISION

15

| | |
|---|---|
| 16   ZACKY FARMS, LLC, | Case No. 12-37961-TH |
| 17       Debtor. | Chapter 11 |
| 18 | Adv. Pro. No.: 12-03672 |
| 19 | DCN: SS-2 |
| 20 | |
|    FOSTER POULTRY FARMS, | **MEMORANDUM OF FOSTER POULTRY FARMS IN SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION** |
| 21       Plaintiff, | |
| 22   v. | Date:      January 8, 2013 |
| 23   ZACKY FARMS, LLC, | Time:      9:32 a.m. |
| | Judge:    Thomas C. Holman |
| 24       Defendant. | Dept.     B |
| 25 |          501 I Street, 6th Floor, Courtroom 32 Sacramento, CA |
| 26 | |

27

28

# TABLE OF CONTENTS

**Page**

**INTRODUCTION**................................................................................................ 1

STATEMENT OF FACTS ...................................................................................... 3

    A.     The Purchase Agreement ..................................................................... 3

    B.     The Trademark License Agreement..................................................... 4

    C.     Zacky Farms Breached the Purchase and Trademark License Agreements .......... 5

    D.     Zacky Farms' Ongoing and Continuous Breaches are Willful ............................. 5

**ARGUMENT** ...................................................................................................... 5

I.     FOSTER FARMS IS LIKELY TO SUCCEED ON THE MERITS ................................. 6

    A.     Foster Farms Has a Reasonable Likelihood of Success on the Merits on its Breach of Contract Claims.................................................... 6

    B.     Foster Farms Has a Reasonable Likelihood of Success on the Merits on its Unfair Competition Claim ............................................... 8

II.    FOSTER FARMS WILL SUFFER IRREPARABLE HARM IF THE INJUNCTION IS NOT ISSUED .................................................... 11

    A.     Foster Farms Faces a Serious Risk of Loss to the Benefits of its Bargain with Zacky Farms .......................................................... 11

    B.     Foster Farms May Suffer a Loss of Goodwill and Reputation as a Result of Zacky Farms' Unauthorized Use of the "Zacky Farms" Trademark............... 12

    C.     Foster Farms Faces an Unquantifiable Risk of Loss Related to Customers—Also Unascertainable ...................................................... 14

III.   FOSTER FARMS ALSO MEETS THE NINTH CIRCUIT'S ALTERNATIVE STANDARD FOR INJUNCTIVE RELIEF .................................... 15

    A.     Zacky Farms' Misuse of the "Zacky Farms" Trademark Raises a Serious Issue ............................................................................ 15

    B.     Balancing the Hardships Weighs in Favor of Foster Farms ............................. 15

**CONCLUSION** ................................................................................................ 16

1

**TABLE OF AUTHORITIES**

2

Page(s)

3

CASES

4

*Arce v. Kaiser Foundation Health Plan, Inc.*,
   181 Cal. App. 4th 471 (2010) ...................................................................8

5

*Barnes v. Indep. Auto. Dealers Ass'n Health & Benefit Plan*,
   64 F.3d 1389 (9th Cir. 1995) ...................................................................6

6

7

*Bentley Motors Limited Corp. v McEntegart*,
   Case No. 8:12-cv-1582-T-33, 2012 U.S. Dist. LEXIS 145253
   (M.D. Fl. Sept. 19, 2012) ..............................................................12, 13

8

9

*Canadian Nat'l Ry. v. City of Rockwood*,
   Case No. 04-40323, 2005 U.S. Dist. LEXIS 40131
   (E.D. Mich. June 1, 2005) ......................................................................14

10

11

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) ...........................................................................8

12

*Cerritos Valley Bank v. Stirling*,
   81 Cal. App. 1108 (2000) ........................................................................7

13

14

*Coastal Distrib., LLC v. Town of Babylon*,
   Case No. CV 05-2032, 2005 U.S. Dist. LEXIS 40795 (E.D.N.Y. July 15, 2005) .................14

15

*E. & J. Gallo Winery v. Pasatiempos Gallo, S.A.*,
   905 F. Supp. 1403 (E.D. Cal. 1994) .................................................8, 14

16

*In re Estate of Ferdinand Marcos, Human Rights Litig.*,
   25 F. 3d 1467 (9th Cir. 1994) .................................................................6

17

18

*Estee Lauder Cos. v. Batra*,
   430 F. Supp. 2d 158 (S.D.N.Y. 2006) ....................................................12

19

*Gerawan Farming, Inc. v. Rehrig Pac. Co.*,
   Case No. 1:11-cv-01273, 2012 U.S. Dist. LEXIS 28017
   (E.D. Cal. Mar. 2, 2012) .........................................................................8

20

21

*HSBC Bank USA v. Dara Petroleum, Inc.*,
   Civ. No. 2:09-2356, 2010 U.S. Dist. LEXIS 61633
   (E.D. Cal. May 27, 2010) ........................................................................7

22

23

*In re Focus Media Inc*,
   387 F.3d 1077 (9th Cir. 2004) .................................................................6

24

*Los Angeles Coliseum Comm'n v. Nat'l Football League*,
   634 F.2d 1197 (9th Cir. 1980) .................................................................6

25

*MacSweeney Enters. v. Tarantino*,
   106 Cal. App. 2d 504 (1951) ...................................................3, 9, 10, 15

26

27

28

1

**TABLE OF AUTHORITIES**
**(cont'd)**

2

**Page(s)**

3

*McDonald v. Coldwell Banker*,
  543 F.3d 498 (9th Cir. 2008) ...................................................................................8

4

*McNeary-Calloway v. JP Morgan Chase Bank, N.A.*,
  863 F. Supp. 2d 928 (N.D. Cal. 2011) ......................................................................8

5

6

*Mister Softee, Inc. v. Valdez*,
  No. 01 Civ. 12742, 2002 U.S. Dist. LEXIS 6450
  (S.D.N.Y. Apr. 15, 2012)........................................................................................13

7

8

*Monaco v. Bear Stearns Residential Mortg. Corp.*,
  554 F. Supp. 2d 1034 (C.D. Cal. 2008) ....................................................................7

9

*Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*,
  22 F.3d 546 (4th Cir. 1994) ....................................................................................14

10

*MySpace, Inc. v. Wallace*,
  498 F. Supp. 2d 1293 (C.D. Cal. 2007) ..................................................................13

11

12

*Nat'l Elevator Cab & Door Corp. v. H & B, Inc.*,
  Case No. 07 CV 1562, 2008 U.S. Dist. LEXIS 5389 (E.D.N.Y. Jan. 24, 2008) ....14

13

*Paul Reilly Co. v. Dynaforce Corp.*,
  449 F. Supp. 1033 (E.D. Wis. 1978)........................................................................14

14

*Paramount Land Co. LP v. Cal. Pistachio Comm'n*,
  491 F.3d 1003 (9th Cir. 2007) ............................................................................6, 15

15

16

*Pepsico, Inc. v. Cal. Sec. Cans*,
  238 F. Supp. 2d 1172 (C.D. Cal. 2002) ....................................................................8

17

*Power Balance LLC v. Power Force LLC*,
  Case No. SACV 10-1726, 2010 U.S. Dist. LEXIS 136574
  (C.D. Cal. Dec. 14, 2010) .................................................................3, 11, 12, 14

18

19

*Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*,
  204 F.3d 867 (9th Cir. 2000) ..................................................................................65

20

21

*Sierra On-Line, Inc. v. Phoenix Software, Inc.*,
  739 F.2d 1415 (9th Cir. 1984) ................................................................................15

22

*Stanislawski v. Jordan*,
  337 F. Supp. 2d 1103 (E.D. Wis. 2004)..............................................................12, 13

23

*Stork Restaurant v. Sahati*,
  166 F.2d 348 (9th Cir. 1948) ...............................................................................9, 10

24

25

*Sybersound Records, Inc. v. UAV Corp.*,
  517 F.3d 1137 (9th Cir. 2008) ..............................................................................8, 9

26

*Ticor Title Ins. Co. v. Cohen*,
  173 F.3d 63 (2d Cir. 1999)......................................................................................14

27

28

**TABLE OF AUTHORITIES**
**(cont'd)**

Page(s)

*Wilson v. Hewlett-Packard Co.*,
   668 F.3d 1136 (9th Cir. 2012) ..................................................................................8

**STATUTES, RULES AND REGULATIONS**

Cal. Bus. & Prof. Code § 17200 (West 2002) ........................................................8, 14

Cal. Civ. Code § 1638 (2012) ...............................................................................7

Cal. Civ. Code § 1644 (2012) ...............................................................................7

Fed. R. Civ. P. 65 .............................................................................................6

**OTHER SOURCES**

ABA Section of Antitrust Law, Franchise Dealership Termination Handbook,
   Second Edition (2012) .....................................................................................13

MEMORANDUM IN SUPPORT OF FOSTER POULTRY FARMS'
MOTION FOR A PRELIMINARY INJUNCTION

No. Pgs.

**INTRODUCTION**

In 2001, Zacky Farms, LLC ("Zacky Farms") sold its entire chicken business to Foster Poultry Farms ("Foster Farms") in a multi-million dollar acquisition.  As part of the deal, the parties agreed in writing that, should Zacky Farms re-enter the market, it would no longer use the "Zacky Farms" name when marketing chicken products.  Despite the clear language of the parties' agreements, Zacky Farms has recently begun doing just that.  Injunctive relief is the only adequate remedy to address Zacky Farms' misfeasance.  Foster Farms has more than satisfied all requirements for a preliminary injunction under the governing Ninth Circuit precedent:

1. **Foster Farms is likely to succeed on the merits**.  The parties' agreements are unambiguous and clearly state that Zacky Farms cannot use, or allow a third party to use, the "Zacky Farms" name in the sale of fresh chicken products.  Similarly, Foster Farms is likely to prevail on its unfair competition claim because the actions of Zacky Farms have placed Foster Farms at an unfair competitive disadvantage under the circumstances and will likely lead to confusion.  For example, by using its prior "Zacky Farms" name, Zacky Farms is getting an unwarranted head start in the sale of branded chicken and is also suggesting to California customers that it is simply resurrecting the prior business line, which cannot be the case given that Zacky Farms' new chicken line is completely distinct from the prior one sold to Foster Farms over eleven years ago.

2. **Foster Farms will be irreparably injured if an injunction is not issued**.  Based on the market dynamics, the competitive position of the parties historically, and the nature of the harm that Foster Farms has and will continue to suffer in the future as a result of the breach, the resulting injury to Foster Farms cannot be computed in monetary damages to a reasonable certainty.  *See* Declaration of Robert D. Reynolds ("Reynolds Decl.") ¶¶ 24-25 (attached hereto as Exhibit 1).[1]  Notably, over the last few decades, the California fresh chicken market has evolved into a brand-driven market that focuses on differentiated products.  *Id*. ¶¶ 12-13.  At the time that Zacky Farms sold its chicken business to Foster Farms, the "Zacky Farms" name was a

---

[1] Robert D. Reynolds is an economic expert who has worked in the food industry for more than forty five years, focusing on the state of California.

well-known, established brand in the California market.  For the acquisition to make economic sense, Foster Farms had to ensure that no other party—including Zacky Farms—could benefit from the recognizable name associated with the fresh chicken business that it purchased.  In selling chicken products under the "Zacky Farms" name, Zacky Farms is seeking to recapture and exploit the exact same goodwill and brand recognition that it sold to Foster Farms in 2001.  These wrongful actions jeopardize Foster Farms' multi-million dollar investment into the business, its competitive position in the marketplace, and its relationships with retailers and consumers.  The potential harm to Foster Farms cannot be computed.  Reynolds Decl. ¶¶ 21, 24-25.

Zacky Farms also threatens the long-established reputation and goodwill of Foster Farms.  There is a substantial risk that customers may remember that Foster Farms purchased Zacky Farms in 2001, try the new Zacky Farms product, and mistakenly attribute any dissatisfaction or other product characteristics to Foster Farms.  As a result, Foster Farms' reputation and goodwill could suffer.  Likewise, Foster Farms faces the potential loss of customers who previously preferred Zacky Farms branded chicken and, under the mistaken impression that Zacky Farms is now selling the same chicken products it did prior to the acquisition, will switch over to the new Zacky Farms products.  Consistent with well-established case law, these significant losses are uncertain and unquantifiable, leaving Foster Farms without an adequate remedy at law.

3.  **At the barest minimum, Zacky Farms' misuse of the "Zacky Farms" trademark raises serious questions and the balance of hardships overwhelming tips in favor of Foster Farms**.  Foster Farms has satisfied the Ninth Circuit's alternative formulation for injunctive relief as well.  On one hand, Foster Farms faces immeasurable losses to its competitive position, customer base, and reputation while, on the other hand, Zacky Farms faces no harm if it is merely required to honor contracts it signed and for which Zacky Farms already received millions of dollars in valuable consideration.  Importantly, Zacky Farms is still free to develop a chicken business provided that it produces, sells and distributes chicken products *under a different name*.

Zacky Farms' current use of the trademark in its chicken business raises a number of

serious questions.  For example:

- Will Zacky Farms continue using the trademark and, if so, to what extent will Zacky Farms be able to capitalize on and profit from this use?
- Will customers purchase the new Zacky Farms product under the mistaken belief that the company is selling the same chicken products it sold eleven years ago?
- Or, to the contrary, will customers dislike the new Zacky Farm chicken products, remember that Zacky Farms sold its entire chicken business to Foster Farms and attribute it to Foster Farms?

As case law demonstrates, losses of the type Foster Farms is suffering from the unauthorized exploitation and use of the "Zacky Farms" name are difficult if not impossible to quantify. *See, e.g.*, *Power Balance LLC v. Power Force LLC*, Case No. SACV 10-1726, 2010 U.S. Dist. LEXIS 136574, at *17, *20 (C.D. Cal. Dec. 14, 2010) (granting injunctive relief in unfair competition case); *MacSweeney Enters. v. Tarantino,* 106 Cal. App. 2d 504, 510, 514 (Cal. 1951) (same).  The only way to insure that Foster Farms receives the benefit of its bargain and is not irreparably harmed is to grant its request for injunctive relief and preserve the status quo until the claims are resolved on the merits.

## STATEMENT OF FACTS

Each of the facts set forth below is supported by declarations or exhibits filed concurrently with this motion.[2]

### A.    The Purchase Agreement

On March 22, 2001, Zorro Leasing LLC, Fresno Farming LLC, Foster Farms, Inc.[3] (collectively "Purchasers") and Zacky Farms, Zacky Foods, and A.B. AG Services, Inc. (collectively, "Sellers") signed a Purchase Agreement whereby the Purchasers acquired the entire Zacky Farms chicken business.  *See* Declaration of Robert Kellert ("Kellert Decl.") ¶ 2 (attached

---

[2] As part of its motion for a preliminary injunction, Foster Farms is concurrently submitting sworn declarations for the following individuals: (1) Robert D. Reynolds, an economic consultant employed at Reynolds Economics, located in Moraga, California; (2) Robert A. Kellert, the Senior Vice President of Retail Sales at Foster Farms and employed with the company for more than thirty years; (3) Peter B. O'Sullivan, a sales representative at Foster Farms; (4) Margie Jurado, a sales representative at Foster Farms, and (5) Carmine R. Zarlenga, a partner at Mayer Brown LLP and counsel for Foster Farms. Foster Farms is also filing a First Amended Complaint ("FAC"), which attaches copies of the Purchase and Trademark License Agreements and relevant exhibits.  The agreements are attached as Exhibits 1 and 2 to the FAC, respectively.

[3] Foster Poultry Farms is the successor in interest to all rights of Foster Farms, Inc.  Kellert Decl. ¶ 4.

hereto as Exhibit 2); *see also* Ex. 1 to FAC at 1.[4]  This business consisted of the growing, processing, distributing, and selling of chicken and chicken products.  *Id*.  The Purchase Agreement provided that effective at closing, the Sellers, including Zacky Farms, would not, and would not allow a third party to, use certain intellectual property listed in Schedule 2.2(i) of the Purchase Agreement, including the "Zacky Farms" name.  *See* Kellert Decl. ¶ 2; Ex. 1 to FAC § 5.13 and Schedule 2.2(i).  The closing took place on October 5, 2001.  Reynolds Decl. ¶ 7.

The Purchase Agreement did give Foster Farms a temporary right to use the "Zacky Farms" name for a period of 36 months following the closing.  Kellert Decl. ¶ 2; Ex. 1 to FAC § 5.13 and Schedule 1.1(b).  This durational period expired on October 5, 2004.  *Id*.  At that time, under the Purchase Agreement both Foster Farms and Zacky Farms were permanently prohibited from using the "Zacky Farms" name in conjunction with the sale of fresh chicken products.  Kellert Decl. ¶ 2; Ex. 1 to FAC § 5.13 and Schedule 2.2(i).

Perhaps as important as what is prohibited under the Agreement is what is allowed.  The Purchase Agreement does not prohibit Zacky Farms from selling "Ancillary Chicken Products" which consist of processed products such as chicken hotdogs, sausages, deli chicken loaves, and chicken bologna.  Kellert Decl. ¶ 2; Ex. 1 to FAC at 1-2.  Moreover, the Purchase Agreement currently allows Zacky Farms to sell raw chicken products provided, however, that it does not do so under the "Zacky Farms" name.  Kellert Decl. ¶ 2; Ex. 1 to FAC § 5.11 (prohibiting Zacky Farms from selling chicken products for a ten-year blackout period following the October 5, 2001 closing).  The Purchase Agreement is governed by California law.  Kellert Decl. ¶ 2; Ex. 1 to FAC § 12.2 (noting that California law governs the agreement).

## B.   The Trademark License Agreement

On October 5, 2001, the day of the closing, Zacky Farms, Zacky Foods, and A.B. AG Services, Inc. (collectively, "Licensors") and Zorro Leasing LLC, Fresno Farming LLC, and Foster Poultry Farms (collectively "Licensees") entered into a Trademark License Agreement which was aimed at facilitating the parties' respective use of the various trademarks implicated

---

[4] Robert Kellert has firsthand knowledge of the Purchase and Trademark License Agreements and, in his declaration, attests to their authenticity.  Kellert Decl. ¶¶ 2-5.

in the acquisition.  Kellert Decl. ¶ 4; Ex. 2 to FAC § 10.  Similar to the Purchase Agreement, the Trademark License Agreement provided that following the 36-month temporary license, neither Zacky Farms, as a licensor, nor Foster Farms, as a licensee, would have any further right to the "Zacky Farms" name for purposes of selling chicken products.   Kellert Decl. ¶ 4; Ex. 2 to FAC §10.  The Trademark License Agreement is also governed by California law.  Kellert Decl. ¶ 4; Ex. 2 to FAC § 13(b).

### C.    Zacky Farms Breached the Purchase and Trademark License Agreements

For eleven years, Zacky Farms honored the foregoing contract provisions.  However, despite the clear terms of the Purchase and Trademark License Agreements, Zacky Farms recently began selling fresh chicken products under the "Zacky Farms" name.  On October 4, 2012 and November 30, 2012, Foster Farms identified fresh chicken products at a Harvest Market Store in Novato, California bearing the "Zacky Farms" trademark.  *See* Declaration of Peter O'Sullivan ("O'Sullivan Decl.") ¶¶ 2-3 and Exs. A and B to O'Sullivan Decl. (attached hereto as Exhibit 3).  Foster Farms identified similar products on October 12, 2012, at a Vincente Foods store in West Los Angeles, California.  *See* Declaration of Margie Jurado ("Jurado Decl.") ¶ 2 and Ex. A to Jurado Decl. (attached hereto as Exhibit 4).  Foster Farms employees took color photographs of the products each of the three occasions.  *See* O'Sullivan Decl. ¶¶ 2-3 and Exs. A and B to O'Sullivan Decl.; Jurado Decl. ¶ 2 and Ex. A to Jurado Decl.

### D.    Zacky Farms' Ongoing and Continuous Breaches are Willful

In an effort to avoid litigation on this issue, on October 26, 2012, counsel for Foster Farms sent Zacky Farms a letter notifying the company of the breaches and requesting that Zacky Farms cease and desist use of the "Zacky Farms" name on chicken products.  *See* Declaration of Carmine R. Zarlenga ("Zarlenga Decl.") ¶ 2 and Ex. A to Zarlenga Decl. (attached hereto as Exhibit 5).  Zacky Farms did not respond to the letter, leaving Foster Farms no choice but to pursue its legal remedies.  Zarlenga Decl. ¶ 4.

### ARGUMENT

This Court may enjoin Zacky Farms from further misuse of the "Zacky Farms" name pending resolution of the case on the merits.  Fed. R. Civ. P. 65; *In re Estate of Ferdinand*

*Marcos, Human Rights Litig.,* 25 F. 3d 1467, 1476 (9th Cir. 1994). A preliminary injunction is appropriate if Foster Farms can demonstrate "either (1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) serious questions going to the merits and a balance of hardships strongly favoring the plaintiffs." *Paramount Land Co. v. Cal. Pistachio Comm'n*, 491 F.3d 1003, 1008 (9th Cir. 2007). "'These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases.'" *Id.* (quoting *Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 874 (9th Cir. 2000)). "They are not separate tests but rather 'outer reaches of a single continuum.'" *Id.* (quoting *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1201 (9th Cir. 1980)). The Ninth Circuit has applied the above preliminary injunction standard to adversarial proceedings filed in bankruptcy court. *See In re Focus Media Inc.*, 387 F.3d 1077, 1085-86 (9th Cir. 2004) (applying standard and affirming grant of preliminary injunction in adversarial proceeding in bankruptcy court).

As demonstrated below, Foster Farms meets either test for injunctive relief.

## I.    FOSTER FARMS IS LIKELY TO SUCCEED ON THE MERITS

### A.    Foster Farms Has a Reasonable Likelihood of Success on the Merits on its Breach of Contract Claims

Foster Farms is likely to succeed on the merits given that the language in both the Purchase and Trademark License Agreements is unambiguous. Any doubt as to the scope of the contract prohibition is removed by the stated exceptions to it. Under California law, the maxim "expressio unius est exclusio alterius" applies—the inclusion of one excludes all others. *Barnes v. Indep. Auto. Dealers Ass'n Health & Benefit Plan*, 64 F.3d 1389, 1393 (9th Cir. 1995) (noting that the failure to include a provision for one contingency, after specifying others, implies a negative). That Zacky Farms may sell processed chicken products such as chicken hotdogs as an exception makes no sense in the absence of a broader prohibition. Kellert Decl. ¶ 2; Ex. 1 to FAC at 1-2. Under California law, contract terms should be interpreted to make sense. Cal. Civ. Code § 1644 (2012) ("The words of a contract are to be understood in their ordinary and popular sense[.]").

Under California law, unambiguous contractual provisions such as those at issue generally do not require discovery but instead can be resolved in the early stages of litigation. *See HSBC Bank USA v. Dara Petroleum, Inc*., Civ. No. 2:09-2356, 2010 U.S. Dist. LEXIS 61633 at *9 (E.D. Cal. May 27, 2010) (quoting *Monaco v. Bear Stearns Residential Mortg. Corp*., 554 F. Supp. 2d 1034, 1040 (C.D. Cal. 2008)) ("Resolution of contractual claims on a motion to dismiss is proper if the terms of the contract are unambiguous."); *Cerritos Valley Bank v. Stirling*, 81 Cal. App. 4th 1108, 1116, 1118, (Cal. 2000) (affirming grant of summary judgment in breach of contract claim based on unambiguous contract language); *see also* Cal. Civ. Code § 1638 (2012) ("The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity"); *see also* Ex. 1 to FAC § 12.2 (noting that California law governs the agreement); Ex. 2 to FAC § 13(b) (same).

The Purchase Agreement clearly provided that following the October 5, 2001 closing, Zacky Farms was prohibited from using, or allowing a third party to use, certain Intellectual Property, including the "Zacky Farms" name in the sale of chicken products. *See* Kellert Decl. ¶ 2 and Ex. 1 to FAC § 5.13 and Schedule 2.2(i). Indeed, while the Purchase Agreement did allow for the temporary use of the "Zacky Farms" name after the closing, the temporary license was granted to Foster Farms—not Zacky Farms. *See* Kellert Decl. ¶ 2; Ex. 1 to FAC § 5.13. Similarly, the Trademark License Agreement provided that neither party would have any further right to the "Zacky Farms" name after the end of the 36-month durational license to Foster Farms, which expired on October 5, 2004. *See* Kellert Decl. ¶ 2; Ex. 2 to FAC § 10. This prohibition was not durational in nature, but absolute and permanent. *Id*. Zacky Farms' own behavior in the ensuing eleven years goes a long way in affirming the plain meaning of the contracts.

Notably, Foster Farms offered irrefutable evidence of the breaches in the form of large, color photographs that clearly show fresh chicken products affixed with the "Zacky Farms" trademark. O'Sullivan Decl. ¶¶ 2-3 and Exs. A and B to O'Sullivan Decl.; Jurado Decl. ¶ 2 and Ex. A to Jurado Decl. As a result, there is no doubt that breaches are occurring.

**B.      Foster Farms Has a Reasonable Likelihood of Success on the Merits on its Unfair Competition Claim**

To prevail on its unfair competition claim under the California's Unfair Competition Law ("UCL"), Business and Professions Code §§ 17200, *et seq*., Foster Farms must prove that Zacky Farms "engaged in any unlawful, unfair or fraudulent business act or practice[.]"  *See Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002) (citing Cal. Bus. & Prof. Code § 17200 (West 2002)) (internal quotation marks omitted).  "The California Supreme Court has held that the UCL's coverage is sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law."  *Wilson v. Hewlett-Packard Co*., 668 F.3d 1136, 1140 (9th Cir. 2012) (citing *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co*., 20 Cal. 4th 163, 180 (1999)) (internal quotations omitted).

"A breach of contract … may form the predicate for a UCL claim, "provided it also constitutes conduct that is unlawful, or unfair, or fraudulent.""  *Arce v. Kaiser Foundation Health Plan, Inc*., 181 Cal. App. 4th 471, 489 (2010) (internal citations omitted).  Moreover, "a business practice is unfair when it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  *Gerawan Farming, Inc. v. Rehrig Pac. Co*., Case No. 1:11-cv-01273, 2012 U.S. Dist. LEXIS 28017, at *34 (E.D. Cal. Mar. 2, 2012) (quoting *McDonald v. Coldwell Banker*, 543 F.3d 498, 506 (9th Cir. 2008) (internal quotations omitted).  Finally, a business practice is fraudulent "where members of the public are likely to be deceived."  *Sybersound Records, Inc. v. UAV Corp*., 517 F.3d 1137, 1152 (9th Cir. 2008).  "To establish a violation of the UCL, a plaintiff may establish a violation under any one of these prongs."  *McNeary-Calloway v. JP Morgan Chase Bank, N.A*., 863 F. Supp. 2d 928, 960 (N.D. Cal. 2011).  Foster Farms will likely succeed on all three prongs.

*First*, and as established in Section I.A. above, Zacky Farms' breached the Purchase and Trademark License Agreements, as both agreements clearly state that Zacky Farms cannot use the "Zacky Farms" trademark in its fresh chicken business.  *See supra* at pp. 6-8.

*Second*, there is no question that Zacky Farms' conduct is unfair.  In 2001, Foster Farms spent millions of dollars to acquire the Zacky Farms chicken business, a well-known brand in

California—and particularly in Southern California—for decades.  Reynolds Decl. ¶¶ 20-21. Since 2001, Foster Farms has built its chicken processing, products, and marketing system with the expectation that the "Zacky Farms" chicken brand would disappear from the marketplace following the acquisition.  *Id.* ¶ 21.  Quite simply, prior to the acquisition, the "Zacky Farms" name was, for many, synonymous with chicken, and Foster Farms paid the price for acquiring the assets and goodwill associated with this recognized brand through the hefty purchase price. *Id.* ¶¶ 20-21.

The fact that Zacky Farms is now selling fresh chicken under the "Zacky Farms" name places Foster Farms at an unfair disadvantage given that it paid a significant sum of money for the licensed use of a brand that Zacky Farm is now unilaterally attempting to recoup, in blatant violation of the parties' various agreements.  *See MacSweeney Enters.,* 106 Cal. App. 2d at 510, 514 (affirming grant of perpetual injunction in unfair competition case where "defendants have marketed [] cocktail sauce as that of plaintiff and [] made a profit thereon based on the good will and reputation of the plaintiff"); *cf. Stork Restaurant v. Sahati*, 166 F.2d 348, 350, 356, 365 (9th Cir. 1948) (preliminary injunction proper in unfair competition case where appellant opened a nightclub that became successful and where the appellees later opened a nightclub with the same name: the Ninth Circuit found that the appellees had "[sought] to capitalize on the publicity that the appellant has built around the name").

*Third*, Zacky Farms' misuse of the trademark is fraudulent, as it will likely deceive the public regarding which products Foster Farms and Zacky Farms respectively sell.  *Sybersound Records*, 517 F.3d at 1152.  Both Foster Farms and Zacky Farms have long histories in the California chicken market, and both developed significant brand recognition and customer bases in the 1970s, 1980s, and 1990s.  Reynolds Decl. ¶ 20.  The fact that both the "Foster Farms" and "Zacky Farms" names are well-known in the California chicken market creates a serious and real threat of customer confusion.

For example, if customers encounter fresh chicken products in retail stores that are affixed with the "Zacky Farms" name, they will likely believe that the same "Zacky Farms" branded chicken products that they purchased a decade before is now back on the market, even

though in actuality, the chicken that they previously purchased are now being sold by Foster Farms under a different label.   California courts have granted injunctive relief in unfair competition claims under similar circumstances.   *See e.g., MacSweeney Enters.,* 106 Cal. App. 2d at 507-09, 514 (affirming grant of injunctive relief where defendant owned the trademark to "Tarantino's" but entered an agreement with the plaintiff that gave plaintiff the right to use the trademark for its restaurant, where the restaurant then became successful, and where the defendant attempted to market and sell a cocktail sauce under the "Tarantino" name and in a script that suggested it was related to the restaurant; the court found that it was reasonable to infer that the defendant was using the "Tarantino" name in a "deliberate attempt to confuse and to mislead the public into believing that the product was sponsored or manufactured by respondent"); *Stork Restaurant*, 166 F.2d at 356 ("confusion of source" occurs when the defendant imitates "[a]n attractive, reputable trade-mark or trade-name" with the goal of "securing for the imitator's goods some of the good-will, advertising and sales stimulation of the trade-mark or trade name").

The fact that Zacky Farms owns the "Zacky Farms" trademark does not alter the legal analysis.  Although a party's misuse of its own trademark may be rare, the Court of Appeals of California in *MacSweeney Enterprises* was unequivocal in finding that liability may still attach when the misuse causes injury and confusion:

> The legal question presented is whether a person may use his own name to advertise his product when he resorts to deception intended to confuse the buying public and which inevitably would injure another rightfully using the name.  We have no hesitancy in holding that such deceptive practices may be enjoined even though such injunction deprives a person from using his own name to advertise his product.

*Id*. at 510.  In using the "Zacky Farms" trademark on chicken products, Zacky Farms is similarly seeking to repossess and exploit the goodwill of the "Zacky Farms" brand even though it sold the right to do so to Foster Farms.  *Id.* at 514.

## II.    FOSTER FARMS WILL SUFFER IRREPARABLE HARM IF THE INJUNCTION IS NOT ISSUED

Foster Farms will suffer irreparable harm if Zacky Farms continues to misuse the "Zacky Farms" trademark.  When a party acquires a similar business, a large part of what is purchased is the goodwill and reputation of the brand.  *See, e.g.*, Reynolds Decl. ¶¶ 20, 24.  Significantly, as part of the acquisition, the parties allocated millions of dollars of the purchase price to goodwill alone.  Kellert Decl. ¶ 3; Ex. 1 to FAC at Ex. F (Section B of the "Allocation of Purchase Price" contains a separate line for "Other Intangibles/Goodwill").  The fact that the goodwill of the "Zacky Farms" product played such a vital role in the agreements is no accident.  Both Foster Farms and Zacky Farms have been strong brands in Northern and Southern California since the 1970s.  Reynolds Decl. ¶ 20.  The historical strength of both the Foster Farms and Zacky Farms brands creates a real risk that Foster Farms may suffer losses to its competitive position, goodwill and reputation, and customer base, and these losses are not ascertainable.  Reynolds Decl. ¶¶ 24-25.

### A.    Foster Farms Faces a Serious Risk of Loss to the Benefits of its Bargain with Zacky Farms

As a component of the transaction, both parties agreed not to use the "Zacky Farms" trademark following the acquisition.  *See* Kellert Decl. ¶ 2; Ex. 1 to FAC § 5.13, Schedule 1.1(b) and Schedule 2.2(i); *see also* Kellert Decl. ¶ 4 and Ex. 2 to FAC § 10.  Although Zacky Farms' recent misuse of the trademark may not give rise to a trademark infringement claim *per se*, the same considerations apply by analogy.  It is well-established that trademark misuse warrants injunctive relief to stop it.  *Power Balance LLC*, 2010 U.S. Dist. LEXIS 136574, at *17, *20 (granting plaintiff's motion for a preliminary injunction and noting "[i]njunctive relief is the remedy of choice for trademark and unfair competition claims" because if the infringer "continues using a similar mark, Plaintiff stands to lose the 'investment and competitive position' it has acquired through its trademark.") (internal citations omitted).

The facts justify the same relief here.  The company's 2001 acquisition of the "Zacky Farms" chicken business was strategic in that Foster Farms sought to strengthen and enhance its own business through the acquisition.  Reynolds Decl. ¶ 21.  In light of the breach, Foster Farms

is now at a competitive disadvantage given the "investment and competitive position" that it has developed over the past eleven years since acquiring the Zacky Farms chicken business, and this disadvantage is not readily ascertainable in money damages.  *Power Balance LLC*, 2010 U.S. Dist. LEXIS 136574, at \*17; *see also Stanislawski v. Jordan*, 337 F. Supp. 2d 1103, 1117-28, 1120 (E.D. Wis. 2004) (granting preliminary injunction because the defendant sold knock-off products that resembled those of the plaintiff: the court found that plaintiffs faced a possible "loss of profits" because defendant "may be directly competing" with plaintiff).

It is not known as to what extent Zacky Farms' use of the "Zacky Farms" name will have on Foster Farms' future profitability.  Reynolds Decl. ¶ 24.  For example, in order to counter Zacky Farms' unlawful actions, Foster Farms will likely need to incur substantial cost in developing new promotional and competitive strategies to address the new threat.  *Id.* Courts have found that damages are uncertain and injunctive relief appropriate where the party infringing the trademark has gained a "competitive advantage" that will impact the plaintiff's **future** profitability to an unknown degree.  *See, e.g., Estee Lauder Cos. v. Batra*, 430 F. Supp. 2d 158, 174 (S.D.N.Y. 2006) (in a trade secrets case, it is "very difficult to calculate the monetary damage" because "given the difficulty in ascertaining empirically how much of a competitive advantage such information gives [plaintiff] and/or how much detriment it might cause to the future profitability of [the affected] products.") (citation omitted).  The same reasoning applies and the same relief is warranted here.

### B.    Foster Farms May Suffer a Loss of Goodwill and Reputation as a Result of Zacky Farms' Unauthorized Use of the "Zacky Farms" Trademark

It is possible that Zacky Farms is selling fresh chicken products under the "Zacky Farms" name because it wants to capitalize on the success of the brand even though it sold off the right to do so.  In that sense, this case is similar to a copycat infringement case, where the plaintiff seeks an injunction to stop the unauthorized use of a name or trademark.  Courts routinely enjoin parties from selling knock-offs that are affixed with the plaintiff's trademark because the unauthorized use of the mark can lead to loss of goodwill and reputation. *See Bentley Motors Limited Corp. v McEntegart*, Case No. 8:12-cv-1582-T-33, 2012 U.S. Dist. LEXIS 145253, at

*28-29 (M.D. Fl. Sept. 19, 2012) (preliminary injunction granted where defendant, the owner of Fugazzi Cars, Inc., sold cars affixed with copies of the plaintiff Bentley's marks); s*ee also Mister Softee, Inc. v. Valdez*, No. 01 Civ. 12742, 2002 U.S. Dist. LEXIS 6450, at *1, *3-4 (S.D.N.Y. Apr. 15, 2012) (granting preliminary injunction where plaintiff offered evidence that defendant operated mobile ice cream trucks that were knock-offs of plaintiff's licensed trucks: the court found that the defendants "adopted their design with the obvious purpose of trading on the plaintiff's good will" and also noted that consumers would be confused by the "identical" trucks); *Stanislawski*, 337 F. Supp. 2d 1103 (preliminary injunction granted where defendant sold knock-off products and where plaintiffs could, as a result, experience a "loss of customer relations and goodwill").[5]

The actions of Zacky Farms are not substantially different than a party selling knock-offs —the justification for injunctive relief flows from the absence of authorization to use the mark. The adverse consequences are likewise analogous.  In particular, Foster Farms has no control over the fresh chicken products that Zacky Farms is now selling under the "Zacky Farms" name. *Bentley Motors Limited Corp.*, 2012 U.S. Dist. LEXIS 145253, at *26.  Customers or retailers may attribute the Zacky Farms chicken products to Foster Farms.  Reynolds Decl. ¶ 24.  This risk is particularly heightened given that Zacky Farms has filed for bankruptcy—a development that has received considerable attention in the media.  As a result, the public may form a negative impression of any product associated with the "Zacky Farms" name.  Should this occur, Foster Farms' reputation would be undoubtedly harmed given its strong footprint in the brand-driven California fresh chicken market.  *Id.* ¶¶ 16, 20, 24.

What is more, Zacky Farms is in essence misappropriating goodwill that it sold to Foster Farms.  Courts routinely recognize that a loss of goodwill constitutes irreparable injury.  *See MySpace, Inc. v. Wallace*, 498 F. Supp. 2d 1293, 1305 (C.D. Cal. 2007) ("Harm to business goodwill and reputation is unquantifiable and considered irreparable"); *see also Multi-Channel*

---

[5] The potential for a loss of control in a party's trademark and reputation is also critical in franchise and dealer termination cases where, following termination, the franchisee no longer has a right to hold itself out as an authorized dealer.  *See* ABA Section of Antitrust Law, Franchise Dealership Termination Handbook, Second Edition at 90-94 (2012) (citing cases).

*TV Cable Co. v. Charlottesville Quality Cable Operating Co*., 22 F.3d 546, 552 (4th Cir. 1994) ("the threat of a permanent loss of customers and the potential loss of goodwill also support a finding of irreparable harm"); *Coastal Distrib., LLC v. Town of Babylon*, Case No. CV 05-2032, 2005 U.S. Dist. LEXIS 40795, at *63-64 (E.D.N.Y. July 15, 2005) (finding irreparable injury due to the "loss of goodwill, future contracts and market opportunities"); *see also Canadian Nat'l Ry. Co. v. City of Rockwood*, Case No. 04-40323, 2005 U.S. Dist. LEXIS 40131, at *26-27 (E.D. Mich. June 1, 2005) (same); *Paul Reilly Co. v. Dynaforce Corp*., 449 F. Supp. 1033, 1035 (E.D. Wis. 1978) (loss of goodwill and confusion in marketplace grounds for irreparable injury).

### C.    Foster Farms Faces an Unquantifiable Risk of Loss Related to Customers—Also Unascertainable

The fact that Foster Farms risks losing customers as a result of Zacky Farms' breach also weighs in favor of injunctive relief.  In a variety of circumstances, courts have held that it is difficult to ascertain monetary damages when the plaintiff's future relationship with a customer has been compromised.  *See Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999) (finding irreparable injury where "it would be very difficult to calculate monetary damages that would successfully redress the loss of a relationship with a client that would produce an indeterminate amount of business in years to come."); *see also Nat'l Elevator Cab & Door Corp. v. H & B, Inc*., Case No. 07 CV 1562, 2008 U.S. Dist. LEXIS 5389, at *18-19 (E.D.N.Y. Jan. 24, 2008) (irreparable injury existed because "it would be difficult to calculate monetary damages that would redress the loss of [plaintiff's] long-term, ongoing relationships with its primary customers (assuming a finding of causation) and its potential relationships with future customers").  Foster Farms faces the same risks here.

In California, injunctive relief is also the remedy of choice for unfair competition.  *E. & J. Gallo Winery v. Pasatiempos Gallo, S.A.*, 905 F. Supp. 1403, 1415 (E.D. Cal. 1994) (granting injunctive relief in a case alleging, among other violations, a claim under section 17200); *Power Balance LLC* 2010 U.S. Dist. LEXIS 136574, at *17, *20 (granting injunctive relief and noting that "[i]njunctive relief is the remedy of choice for … unfair competition claims").  Zacky Farms' unfair actions should be halted on this separate and independent ground as well.

1   **III.    FOSTER FARMS ALSO MEETS THE NINTH CIRCUIT'S ALTERNATIVE
        STANDARD FOR INJUNCTIVE RELIEF**

2
3           In addition to showing a likelihood of success on the merits as well as irreparable injury,

Foster Farms surely meets the Ninth Circuit's more relaxed alternative standard for injunctive

4   relief.  *Paramount Land Co. LP*, 491 F.3d at 1008.

5           **A.    Zacky Farms' Misuse of the "Zacky Farms" Trademark Raises a Serious
                    Issue**
6
7           A plaintiff raises a "serious question" when it "has a fair chance of success on the

8   merits."  *See Sierra On-Line, Inc. v. Phoenix Software, Inc*., 739 F.2d 1415, 1421 (9th Cir. 1984)

9   (citations omitted).  As discussed in detail in Section I above, Foster Farms is likely to prevail on

10  its breach of contract and unfair competition claims.  *See supra* at pp. 6-10.  Certainly there is a

11  fair chance of success based on the wording of the contracts alone.

12          **B.    Balancing the Hardships Weighs in Favor of Foster Farms**

13          Moreover, in weighing the relative harm to each parties, Foster Farms will much suffer

14  greater harm if Zacky Farms continues to advertise and sell product under the "Zacky Farms"

15  name.  Notably, nothing prevents Zacky Farms from selling as many chicken products as it

16  wants under a different name.  Kellert Decl. ¶ 2; Ex. 1 to FAC § 5.11.  Given Zacky Farms' wide

17  range of options, the contract limitation is reasonable and should be enforced.  *See MacSweeney*

18  *Enters.,* 106 Cal. App. 2d at 514 (restriction against use of trademark name was a "reasonable

19  limitation" when defendants were only enjoined from using their family trademark to the extent

20  that it confused and mislead the public; defendants were free to use the trademark for other

21  activities).  At most, Zacky Farms will face minor inconvenience in removing the "Zacky Farms"

22  label from its chicken products and directing its employees not to use the label moving forward.

23  This inconvenience pales in comparison to the harm that Foster Farms will experience if Zacky

24  Farms continues to misuse the trademark.  In any event, Zacky Farms has already traded its right

25  to use the trademark for the money it received.  Under the circumstances, no hardship

26  whatsoever results from a discontinuation of use similar to the last eleven years.

27

28

1

**CONCLUSION**

2          For the foregoing reasons, the Court should grant Foster Farm's motion for a preliminary

3    injunction.

4

5    DATED: December 11, 2012                    Respectfully submitted,

6                                                SEYFARTH SHAW LLP

7

8                                                By: /s/ Ferry E. Lopez
                                                     Alfred L. Sanderson
9                                                    Ferry E. Lopez
                                                 Attorneys for Plaintiff
10                                               FOSTER POULTRY FARMS

15098872v.1

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM IN SUPPORT OF FOSTER POULTRY FARMS'
MOTION FOR A PRELIMINARY INJUNCTION